Appellant, E. Roberta Wade, appeals from a decision of the Franklin County Court of Common Pleas affirming an order of the State Personnel Board of Review ("SPBR") upholding appellant's termination from her position as director of the Mansfield office of appellee, the Ohio Bureau of Workers' Compensation ("BWC").
Appellant was employed as director of the Mansfield office from July 13, 1992, until her termination on July 19, 1994. Appellant filed an appeal of her termination with the SPBR. The matter was heard by an Administrative Law Judge ("ALJ"), who bifurcated the appeal to consider separately the two principal issues raised therein: whether appellant was a classified employee and thus entitled to protection under Ohio civil service law, and whether appellant was entitled to "whistleblower" protection under R.C. 124.341, because she alleged that she had been terminated in retaliation for her attempts to block improper expenditures of state funds.
The ALJ issued an initial order on September 5, 1996, finding that appellant had waived her right to civil service protection by accepting the benefits of the unclassified service. The ALJ issued a subsequent report and recommendation on August 29, 1997, further finding that appellant was not entitled to "whistleblower" protection because she had in fact been terminated for job performance reasons. Appellant filed her objections to the report and recommendation of the ALJ with the SPBR, and additionally filed a motion to submit new evidence. On November 7, 1997, the SPBR issued its final order denying appellant's motion to submit new evidence, and adopting the ALJ's recommendation.
Appellant then appealed to the Franklin County Court of Common Pleas, which issued a decision on June 15, 1998, affirming the order of the SPBR. Appellant now appeals to this court and brings the following assignments of error:
 1. The Trial Court erred in failing to find that Appellant Wade had not accepted the benefits of the unclassified service.
 2. The Trial Court erred in failing to find that the Board's determination that Appellant Wade was not classified was not supported by reliable, probative, and substantial evidence.
 3. The Supreme Court Decision in Chubb v. Ohio Bur. of Workers' Comp. (1998), 81 Ohio St.3d 275, should be reversed.
 4. The Trial Court erred by failing to admit Appellant's new evidence (the 6/19/97 Report of Investigation of the State of Ohio Office of Inspector General).
 5. The Trial Court erred by failing to find that the 7/5/94 memo sent to Wes Trimble's Office was a "whistleblower document."
 6. The Trial Court erred by failing to find that the Board's determination that Appellant Wade was not a whistleblower was not supported by reliable, probative, and substantial evidence.
R.C. 119.12 establishes the standard of review to be applied by the common pleas court when reviewing an administrative appeal. The court may affirm the order of the agency if it finds, based upon the consideration of the entire record and such additional evidence as may be admitted by the court, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. When addressing an appeal from the court of common pleas, our standard of review is limited to a determination of whether the court of common pleas abused its discretion in finding that there was reliable, probative, and substantial evidence in the record to support the order of the administrative agency, and in finding that the order was in accordance with law. Rohde v. Farmer (1970),23 Ohio St.2d 82; Hartzog v. Ohio State Univ. (1985), 27 Ohio App.3d 214. The term "abuse of discretion" implies a decision that is both without a reasonable basis and clearly wrong.Angelkovski v. Buckeye Potato Chips Co. (1983), 11 Ohio App.3d 159
-161. An abuse of discretion implies not merely an error in judgment, but "perversity of will, passion, prejudice, partiality, or moral delinquency." State ex rel. CommercialLovelace Motor Freight, Inc. v. Lancaster (1986), 22 Ohio St.3d 191,193. On questions of law, however, the common pleas court does not exercise discretion and our review is plenary. Univ.Hosp., Univ. of Cincinnati College of Medicine v. State Emp.Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus.
As reflected in the SPBR's bifurcated approach to dealing with this matter, the present appeal presents two distinct issues: whether appellant was entitled to the benefits and protection of the classified civil service, and whether appellant was entitled to "whistleblower" protection under R.C.124.341, based upon her efforts to report certain questionable claims and expenditures processed through her office. Appellant's first three assignments of error address the issue of appellant's status as a classified or unclassified employee, present interrelated issues, and will accordingly be addressed together.
At the time appellant was hired for the position of "Service Office Manager" for the Mansfield BWC office, she executed a signed agreement acknowledging that her position would place her in the unclassified service. The court of common pleas has specifically affirmed the SPBR's determination that, while appellant's duty were not of a fiduciary nature and thus did not fall within the most common category of unclassified positions, the specific written waiver executed by appellant upon assuming her duties permitted the state to assert the defenses of waiver and estoppel to circumvent the normal protections of classified service. The recent Ohio Supreme Court case of Chubb v. Ohio Bur. of Workers' Comp. (1998),81 Ohio St.3d 275, is directly on point:
 In an appeal pursuant to R.C. 124.34 by a terminated public employee who claims classified status, the state may assert defenses of waiver and estoppel if the employee has accepted appointment to a position designated as unclassified and also has accepted the benefits of that unclassified position, regardless of whether the employee's actual job duties fall within the classified status. [Id., syllabus.]
Initially, we note that appellee's brief presents extensive argument on the issue of whether or not the SPBR erred, abinitio, by determining that appellant's duties were in fact those of a classified employee. Appellee asserts that if the SPBR is found to have erred in this conclusion, the estoppel rule of Chubb need not even be applied in the present matter because appellant is not entitled to the benefits of classified service in any case. In support of this position, appellee argues that SPBR lacked jurisdiction to determine whether or not appellant was a classified employee, since appellant had not raised this issue in contesting her termination. Appellee further argues that, even if the SPBR had jurisdiction to consider the issue, its determination that appellant essentially performed classified duties in her job was erroneous, because appellant served in a fiduciary relationship with the appointing authority, Wes Trimble, Administrator for the BWC.
However, this attempt by appellee to reargue the issue of whether appellant's duties placed her in the classified service is not properly before us. This determination by the SPBR was not raised upon appeal to the court of common pleas or this court by means of cross-appeal, and thus we shall not revisit this specific determination by the SPBR. We shall therefore address this matter as one falling under Chubb, and examine whether appellant's employment falls within its ambit.
The SPBR's hearing examiner heard evidence in this case demonstrating that appellant had been paid $64,000 per year under the state's pay Schedule C. R.C. 124.15(H) and 124.152(F) suggest that when an employee is paid pursuant to Schedule C, this is typically a pay rate pursuant to the unclassified service. Appellant also received a $3,000 pay raise in July 1993. The SPBR concluded that the size of this pay increase was not typical of a classified employee, and did not correspond to any step increase because no provision is made for such under Schedule C. Furthermore, there was evidence that appellant was more highly paid than her classified counterpart office managers, despite only having worked for BWC for two years. As the court of common pleas noted, "appellant has not contended that a $3,000 pay increase is not of the nature of a step increase that would be awarded to those in the classified pay ranges." We therefore conclude that the court of common pleas did not abuse its discretion when it found that there was reliable, probative, and substantial evidence before the SPBR that established appellant had accepted the benefit of the unclassified service.
Pursuant to Chubb, once an employee has accepted the benefits of unclassified service, regardless of his or her actual job duties, the state may assert the defenses of waiver and estoppel if the employee contests termination. "The burden remains upon the state agency to prove that waiver or estoppel should apply." Chubb, at 279. In the present case, BWC introduced evidence in the form of appellant's signed waiver of classified service, which supported the state's burden of proof.
The foregoing demonstrates that the present matter falls squarely under the rule set forth in Chubb. Regardless of appellant's actual job duties, she accepted an appointment to a position designated as unclassified by the appointing authority and acknowledged in writing by her to be in the unclassified service. She further accepted benefits concomitant with the unclassified status of the position. We therefore find that the court of common pleas did not err in concluding that there was reliable, probative, and substantial evidence before the SPBR to find that appellant was estopped from asserting the protection of the classified civil service, and that such an estoppel is in accordance with the clear syllabus law of Chubb.
Appellant's first, and second assignments of error are accordingly overruled.
Appellant finally proposes that we "overrule" the Supreme Court's decision in Chubb, and substitute a rule more favorable to her on the facts of this case. Unfortunately, for appellant, this court has neither the authority nor the impertinence to overrule the binding authority issued by this state's highest tribunal. Appellant's third assignment of error is overruled.
Appellant's fourth, fifth, and sixth assignments of error address the SPBR's determination that appellant was not entitled to "whistleblower" protection under R.C. 124.341, providing in pertinent part as follows:
 (A) If a state employee in the classified or unclassified civil service becomes aware in the course of his employment of a violation of state or federal statutes, rules, or regulations or the misuse of public resources, and the employee's supervisor or appointing authority has authority to correct the violation or misuse, the employee may file a written report identifying the violation or misuse with his supervisor or appointing authority.
 If the employee reasonably believes that a violation or misuse of public resources is a criminal offense, the employee, in addition to or instead of filing a written report with the supervisor or appointing authority, may report it to a prosecuting attorney, director of law, village solicitor, or similar chief legal officer of a municipal corporation, to a peace officer, as defined in section 2935.01 of the Revised Code, or if the violation or misuse of public resources is within the jurisdiction of the inspector general, to the inspector general in accordance with section 121.46 of the Revised Code. In addition to that report, if the employee reasonably believes the violation or misuse is also a violation of Chapter 102, section 2921.42, or section 2921.43
of the Revised Code, report it to the appropriate ethics commission.
 (B) Except as otherwise provided in division (C) of this section, no state officer or state employee shall take any disciplinary action against a state employee for making any report authorized by division (A) of this section, including, without limitation, doing any of the following:
 (1) Removing or suspending the employee from employment.
To invoke the jurisdiction of the SPBR and the protection of R.C. 124.341, therefore, a state employee must show (1) a written report; (2) transmitted to his/her supervisor, appointing authority, the state inspector general, or other appropriate legal official which; (3) identifies a violation of state or federal statute, rule, or regulation, or a misuse of public resources. Id.; State ex rel. Cuyahoga Cty. v. SPBR
(1998), 82 Ohio St.3d 496. Although the state employee whistleblower statute has been very sparsely interpreted by the courts, it is noted that it shares many procedural similarities with Ohio's general private employee whistleblower statute, R.C. 4113.52, although the two are otherwise distinguished by significant substantive differences. Robins v. Ohio Dept. ofLiquor Control (June 25, 1996), Franklin App. No. 96APE01-38, unreported (1996 Opinions 2559). Specifically, the burden of meeting the procedural requirements of either whistleblower statute is upon the employee, who bears the burden of demonstrating by a preponderance of the evidence the existence of a written report filed with the appropriate supervisor or other named authority and providing sufficient detail to identify and describe the alleged violation. Id. Although no court has yet explicitly so stated, it would follow that the employee further bears the burden of establishing that the alleged retaliatory termination was in fact a retaliation for the whistleblower's protected activity, rather than based upon some other aspect of job performance.
In the present case, appellant asserts protection under the whistleblower statute, based upon two possible violations of misuse of public resources which she attempted to correct by bringing them to the attention of various individuals at the BWC.
The first such violation involved two attempts by John Finch, then the statewide director of rehabilitation for the bureau, to authorize successive payments of $16,694.29 and $9,640 in favor of a claimant who indisputably was not entitled to such payments. On the first occasion, appellant intercepted the authorized expenditure and wrote a report to her supervisor, Jim Martin, with supporting documentation and expressing her concern over Finch's authorization of this expenditure. This report constituted the first of the "whistleblower" documents submitted to the SPBR by appellant. When Finch resubmitted a similar proposed expenditure several months later, appellant again blocked it and this time telephoned the internal security division to request an investigation. During a later conversation with her supervisor, according to appellant's testimony, Martin expressed in a "very disapproving tone of voice" that she should not have "turned Finch in" to internal security. Appellant's own testimony, however, as well as other evidence in the record, indicates that Martin at the same time completely approved of appellant's actions to block the improper expenditures authorized by Finch.[1]
The second instance of improper expenditure which concerned appellant was an alleged overpayment to certain employees of appellant's office under a grievance settlement entered into pursuant to a collective bargaining unit agreement. Appellant described the alleged overpayment in a memo to Evelyn Street, the BWC's director of payroll, explaining the error and requesting that it be corrected. This memo to Street constituted the second of appellant's claimed whistleblower documents.
Appellant, apparently dissatisfied with prior responses to her concerns about the Finch problem, then contacted the office of Wes Trimble, BWC Administrator, and appellant's appointed authority, speaking to Trimble's assistant, Debbie Wren. Appellant then summarized her concerns in a detailed memorandum addressed to Wren, and later followed up with a telephone call to make sure that Wren had received it. This memo was the third proposed whistleblower document submitted to the SPBR by appellant.
The SPBR concluded, and the court of common pleas agreed, that appellant was not entitled to whistleblower protection in part because the memorandum sent to Debbie Wren was not addressed to Wes Trimble as the appointing authority, or any other named person under the whistleblower statute. While appellant argues that a letter addressed to the appointing authority's office is sufficient to meet the requirement, we disagree. The memorandum was by appellant's own testimony addressed to Debbie Wren, not Wes Trimble. The phone conversations appellant had before and after sending the memo were with Ms. Wren. While appellant may have assumed that the memo would eventually make its way to Trimble's desk, it was not addressed to Trimble himself nor even addressed to him in care of Ms. Wren. The requirement of a written communication, specifically addressed to an appropriate individual, is an essential element of whistleblower protection and will be strictly applied. Kulch v. Structural Fibers, Inc. (1997),78 Ohio St.3d 134, 141. (Interpreting comparable provisions under R.C. 4113.52.) We therefore conclude that the trial court did not err in affirming the SPBR's conclusion that the memo to Ms. Wren did not qualify as a "whistleblower document." We would note, however, that such determinations must be made by a case-by-case basis, and the present holding would for example not be applicable to instances in which a communication intended for the appointing or other appropriate authority was "intercepted" by a subordinate, thereby never reaching the intended recipient.
The SPBR concluded that the two other possible "whistleblower" memos, one addressed to Evelyn Street regarding the alleged payroll error, and the other one addressed to Jim Martin complaining of Finch's improper payments, did qualify as "whistleblower documents" but were not the primary reason for appellant's termination. The SPBR hearing officer's report noted that Jim Martin had testified that appellant's termination was based upon performance problems with the Mansfield office, including failure to meet goals, increasing backlogs, deteriorating statistical efficiency, and problems with the telephone system. Martin also testified that an adversarial relationship had developed between appellant and various subordinate employees in her office, particularly the union representatives, and that appellant communicated frequently with Martin in an attempt to counter various letters sent to Martin by Mansfield employees, both signed and anonymous, which complained of appellant's management style and decisions. Martin testified that he believed that appellant had lost sight of her responsibilities in managing the office, and had become preoccupied with "playing chess" to counter these allegations brought by her employees.
Further testimony was heard to the effect that appellant had caused problems by going outside the chain of command, and caused friction in the office by favoring certain employees, which contributed to the general discord between appellant and her staff. Many of the above complaints regarding appellant's management performance predated her complaints on the Finch claims and grievance overpayment issues.
Based on the foregoing evidence before the SPBR, we find that the Franklin County Court of Common Pleas did not abuse its discretion finding there was reliable, probative, and substantial evidence to support the SPBR's conclusion that appellant had been terminated based upon her job performance and problems in the Mansfield BWC office, rather than appellant's expressed concerns over the Finch matter and the alleged grievance overpayment. While appellant argues at length that we should reassess the weight and credibility of this evidence, that is not the province of this court in an administrative appeal. Appellant's fifth and sixth assignments of error are therefore overruled.
Appellant's fourth assignment of error asserts that the SPBR erred in refusing to admit additional evidence, after the matter had been heard before the hearing officer, in the form of a report of investigation compiled by the office of the Ohio Inspector General. The report was critical of the BWC's handling of appellant's reports regarding the Finch matter. The report also noted that the internal investigation initiated by BWC focused on other issues at the Mansfield office, rather than the specific problem reported by appellant. The report concluded that the failure to properly respond to appellant's expressed concerns regarding possible abuse of the claims process, as well as the circumstances under which appellant was terminated from the BWC, could create the appearance that the BWC was taking part in a cover-up, and could "cast a cloud over the integrity" of the claims system. Appellee points out that appellant laid no foundation for the use of the Inspector General's report, nor did the report address the underlying reasons for appellant's termination. We therefore hold that the Franklin County Court of Common Pleas did not err in finding that SPBR had properly refused to admit this additional evidence, and appellant's fourth assignment of error is accordingly overruled.
In accordance with the foregoing, appellant's first, second, third, fourth, fifth and sixth assignments of error are overruled, and the decision of the Franklin County Court of Common Pleas finding that the order issued by the SPBR was supported by reliable, probative, and substantial evidence and in accordance with law is hereby affirmed.
Judgment affirmed.
PETREE and KENNEDY, JJ., concur.
[1] Finch appears to have been later placed on administrative leave, then forced to resign, pursuant to independent investigations of other, unrelated instances of job misconduct, although no further action against Finch appears to have been taken pursuant to appellant's complaint to internal security.